# In the United States Court of Federal Claims

No. 12-250C
(Filed: May 29, 2013)

```
*************************************
SANDRA CHARNETSKI,              *
                                *   Motion to Dismiss; Jurisdiction; Civilian
              Plaintiff,        *   Employment; Social Security
                                *   Administration; Gradual Retirement
v.                              *   Program; Breach of Contract; Intentional
                                *   Interference With Contractual Relations;
THE UNITED STATES,              *   Transfer
                                *
              Defendant.        *
*************************************
```

William E. Vinsko, Jr., Wilkes-Barre, PA, for plaintiff.

Katy M. Bartelma, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**

**SWEENEY**, Judge

      Plaintiff Sandra Charnetski is employed by the United States Social Security Administration ("SSA") in its Wilkes-Barre, Pennsylvania office as a Contact Representative. In 2003, the SSA approved plaintiff's request to participate in its Gradual Retirement Program, allowing her to reduce her work hours for a three-year period. Before the three-year period expired, however, the SSA discontinued the Gradual Retirement Program and advised plaintiff that she had two options: return to work full time or retire. Plaintiff, asserting that her participation in the Gradual Retirement Program was memorialized in a binding contract with the SSA, now seeks compensation for the SSA's purported breach of that contract. Defendant moves to dismiss plaintiff's complaint for lack of jurisdiction and for failure to state a claim upon which the court could grant relief. For the reasons set forth below, the court grants defendant's motion and dismisses plaintiff's complaint for lack of jurisdiction.

## I. BACKGROUND

Plaintiff was hired by the SSA in April 1993 as an Office Automation Clerk.[1] The Notification of Personnel Action form reflecting her hiring indicates that because she had previously worked for the federal government, she was being reinstated as a career employee. The form further reflects that plaintiff was hired by the SSA as a permanent, full-time employee in a competitive service position.

In 2003, plaintiff learned about the existence of the SSA's Gradual Retirement Program, which she believed was a program approved by the United States Office of Personnel Management ("OPM"). Gradual Retirement Program participants were able to maintain their status and employment at the SSA while working a reduced number of hours. Then, after a specified amount of time, participants would apparently retire.[2]

Upon deciding that she wanted to participate in the Gradual Retirement Program, plaintiff submitted a Request for Gradual Retirement form to the SSA. The form indicated that from December 12, 2003, through December 11, 2006, plaintiff would have "[a] shorter workweek requiring [Leave Without Pay] on Monday and Friday with on duty time Tuesday through Thursday." Plaintiff executed the form on October 6, 2003. A Line Manager executed the form on October 17, 2003; then, on October 20, 2003, the form was executed by a Recommending Official, a Concurring Official, and an Approving Official.

Pursuant to the approved plan, plaintiff began working a shortened workweek on December 12, 2003. In January 2006, however, the SSA informed plaintiff that as the result of an OPM directive, it was discontinuing the Gradual Retirement Program. The SSA gave plaintiff two options: return to full-time employment or retire. Because she did not want to retire, plaintiff returned to full-time status beginning February 6, 2006, reserving the right to return to the Gradual Retirement Program if it was reinstated. In the Request for Gradual Retirement form plaintiff executed on February 9, 2006, she indicated that she had retained an attorney in an attempt to enforce the gradual retirement plan approved by the SSA in 2003.

---

[1] The court derives the facts in this section, which the court presumes to be true for the purposes of ruling on defendant's motion to dismiss, Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995), from the complaint; the exhibits attached to the complaint; the exhibit attached to defendant's motion; and filings in Charnetski v. Astrue, Civ. No. 3:10-CV-2459 (M.D. Pa. filed Nov. 30, 2010), including the complaint and an unpublished memorandum decision.

[2] The court uses the word "apparently" because there is nothing in the record reflecting that participants in the Gradual Retirement Program were required to retire at the end of the specified time period. Indeed, there is scant information in the record concerning the program's requirements, guidelines, management, policies, or procedures. Given the program's name, however, the court presumes that retirement was the participants' ultimate goal.

Plaintiff's decision not to retire was not well received by SSA personnel. They allegedly subjected plaintiff to discriminatory and harassing behavior, with the goal of forcing her into retirement. The emotional distress caused by this behavior resulted in plaintiff suffering from a number of health issues.

From 2007 to 2009, plaintiff attempted to obtain information from the OPM regarding the basis for the SSA's discontinuation of the Gradual Retirement Program. In April 2009, the OPM advised her attorney that it had never directed the SSA to terminate the program. In fact, the OPM indicated that it had no information at all about the program.

Plaintiff filed suit against the Commissioner of the SSA and the Director of the OPM in the United States District Court for the Middle District of Pennsylvania ("district court") on November 30, 2010. She set forth four claims for relief in her complaint: breach of contract, intentional interference with contractual relations, employment discrimination under 42 U.S.C. § 2000e-16, and employment discrimination under 29 U.S.C. § 633a. The defendants moved to dismiss the two employment discrimination claims and moved to transfer the two contract-related claims to the United States Court of Federal Claims ("Court of Federal Claims"). In an April 18, 2012 ruling, the district court concluded that it lacked jurisdiction over the contract-related claims. In its analysis, the district court explained that because the two claims concerned an alleged contract, the defendants were officials of the United States, and the amount in controversy exceeded $75,000 for each claim, the claims should be transferred to the Court of Federal Claims.

Plaintiff filed a transfer complaint in this court on June 5, 2012, in which she reasserts the two claims for relief transferred by the district court–breach of contract and intentional interference with contractual relations–and seeks damages in excess of $75,000 for each claim. Defendant subsequently moved to dismiss the transfer complaint pursuant to Rule 12(b) of the Rules of the United States Court of Federal Claims ("RCFC"), arguing that the Court of Federal Claims lacks jurisdiction to entertain plaintiff's claims, and even assuming that this court possessed jurisdiction, plaintiff fails to state claims upon which relief could be granted. The parties have concluded briefing and the court, deeming oral argument unnecessary, is now prepared to rule.

## II. DISCUSSION

### A. RCFC 12(b)(1) Motions to Dismiss

In ruling on a motion to dismiss, the court assumes that the allegations in the complaint are true and construes those allegations in the plaintiff's favor. Henke, 60 F.3d at 797. However, the plaintiff bears the burden of proving, by a preponderance of the evidence, that the court possesses subject matter jurisdiction. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). The court may look to evidence outside of the pleadings to determine the existence of subject

matter jurisdiction.  Land v. Dollar, 330 U.S. 731, 735 & n.4 (1974).  If the court finds that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

### B.  The Court Lacks Jurisdiction Over Plaintiff's Breach of Contract Claim

Defendant first contends that the court lacks jurisdiction over plaintiff's breach of contract claim because plaintiff's employment with the SSA is by appointment, not by contract.  It is well-settled that "Tucker Act jurisdiction may be premised on an employment contract, as well as on one for goods and services . . . ."  Army & Air Force Exch. Serv. v. Sheehan, 456 U.S. 728, 735 (1982) (citing United States v. Hopkins, 427 U.S. 123, 126 (1976) (per curiam)); accord Kania v. United States, 650 F.2d 264, 268 (Ct. Cl. 1981) (noting that "[a] contract between [the] government and one of its employees is possible," but only if it is "specifically spelled out as a contract" and "made by a person having authority").  However, it is presumed that "absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government."  Chu v. United States, 773 F.2d 1226, 1229 (Fed. Cir. 1985); accord Schism v. United States, 316 F.3d 1259, 1274-75 (Fed. Cir. 2002) (en banc) ("Federal employees . . . serve by appointment, not contract . . . .").  Consequently, if an individual's "employment was by 'appointment,' a breach of contract action against the government would be precluded."  Hamlet v. United States, 873 F.2d 1414, 1417 n.5 (Fed. Cir. 1989).  In other words, a federal employee's "relationship with the Government cannot be simultaneously governed by both an appointment and a contract."  Collier v. United States, 56 Fed. Cl. 354, 356 (2003), aff'd, 379 F.3d 1330 (Fed. Cir. 2004).  To determine how an individual is employed by the federal government, a court must analyze the relevant statutes and regulations in light of the other evidence presented.  See Hopkins, 427 U.S. at 130.  If the court determines that a federal employee serves by appointment, it must dismiss the employee's breach of contract claim for lack of jurisdiction.  See, e.g., Sheehan, 456 U.S. at 741 ("Because . . . respondent was [not] hired pursuant to an express employment contract, we find that the Tucker Act did not confer jurisdiction over respondent's claims for monetary relief."); Hamlet v. United States, 63 F.3d 1097, 1102 (Fed. Cir. 1995) (noting that because the plaintiff served by appointment, her breach of contract claim could not "provide for jurisdiction under the Tucker Act").

There can be no dispute that plaintiff's employment with the SSA is by appointment.  She was hired by the SSA to fill a position in the competitive service, the competitive service includes "all civil service positions in the executive branch" with limited exceptions not applicable here, 5 U.S.C. § 2102(a)(1) (2000), and the civil service includes "all appointive positions" in the executive branch except for positions in the uniformed services, id. § 2101(1).  See also 5 C.F.R. § 2.2 (2003) (describing how appointments are made in the competitive service).  In addition, plaintiff has not identified any statute or regulation indicating that her employment as a SSA Contact Representative is governed by contract rather than by appointment.  Moreover, the regulation providing the authority for plaintiff's reinstatement to career employment indicates that "an agency may appoint by reinstatement to a competitive

service position a person who previously was employed under career or career-conditional appointment (or equivalent)." Id. § 315.401(a) (emphasis added). Accordingly, based on clear, binding precedent and the applicable statutes and regulations, plaintiff cannot recover for an alleged breach of contract arising from her employment.

Plaintiff attempts to avoid this conclusion by distinguishing the applicable precedent from her own situation. She contends that those earlier decisions concern allegations of a "contractual right in [federal] employment by virtue of [the] employment itself." Resp. 5. In contrast, plaintiff asserts, her breach of contract claim arises from a contract separate and distinct from her employment: the SSA-approved request for gradual retirement. She argues that the statement of the United States Court of Claims ("Court of Claims") in Kania that "[a] contract between [the] government and one of its employees is possible, but it must be specifically spelled out as a contract," 650 F.2d at 268, supports her position. Plaintiff's reliance on Kania, however, does not hold up under close scrutiny.

In noting the possibility that a contract could exist between the federal government and one of its employees, the Court of Claims in Kania relied on the decision of the United States Supreme Court ("Supreme Court") in Hopkins. Id. Hopkins concerned whether an employee of the Army and Air Force Exchange Service ("AAFES"), a government entity that is not supported by appropriated funds, served by appointment. 427 U.S. at 126-30. The AAFES was "created and administered pursuant to the general authority granted the Secretary of the Army and the Secretary of the Air Force," both of whom are authorized to "engage employees by 'appointment' . . . ." Id. at 127. Indeed, AAFES regulations provide that its "ordinary employees" are deemed to "hold their positions by Appointment." Id. However, AAFES regulations also outline a process by which an individual could be employed by contract. Id. at 128-29. Contract employment is "subject to different procedures for negotiating, approval, and administrative remedies from those applicable to" employment by appointment, and the AAFES is prohibited from entering into service contracts with civil service employees. Id. at 129. As the Supreme Court noted, the regulations establish a clear distinction between employment by appointment and employment by contract. Id. Therefore, to determine the status of a particular employee, it is necessary to examine the employee's situation in light of the applicable statutes and regulations. Id. at 130.

In light of the circumstances addressed by the Supreme Court in Hopkins, the Court of Claims' statement in Kania that it was possible for a contract to exist between the federal government and one of its employees cannot be given the meaning ascribed to it by plaintiff. Hopkins concerned the distinction between employment by appointment and employment by contract. The Supreme Court did not address, much less endorse, the possibility that an individual serving by appointment could enter into a separate employment-related contract with her employer during the course of her employment. Thus, the decision of the Court of Claims in Kania cannot be construed to support the possibility of an appointed employee entering into a contract with her employer related to the terms of her employment.

In sum, plaintiff is employed by the SSA by appointment, and any agreement she reached with the SSA that related to the terms of her employment, such as the SSA-approved request for gradual retirement, was derived from her appointment.  Because plaintiff cannot establish the existence of an employment contract, the court lacks jurisdiction under the Tucker Act to entertain plaintiff's claim for breach of contract.

### C. The Court Lacks Jurisdiction Over Plaintiff's Claim of Intentional Interference With Contractual Relations

Defendant also contends that the court lacks jurisdiction over plaintiff's claim of intentional interference with contractual relations, arguing that such a claim sounds in tort.  As defendant correctly remarks, the Tucker Act prohibits the Court of Federal Claims from entertaining tort claims.  28 U.S.C. § 1491(a)(1) (2006).  However, "[i]f contractual relations exist, the fact that the alleged breach is also tortious does not foreclose Tucker Act jurisdiction." Fountain v. United States, 427 F.2d 759, 761 (Ct. Cl. 1970).  Put another way, "where a tort claim stems from a breach of contract, the cause of action is ultimately one arising in contract, and thus is properly within the exclusive jurisdiction of the Court of Federal Claims . . . ." Awad v. United States, 301 F.3d 1367, 1372 (Fed. Cir. 2002); accord Olin Jones Sand Co. v. United States, 225 Ct. Cl. 741, 745 (1980) ("Where . . . a claim is based on breach of contract it is properly within the jurisdiction of this court even though it also alleges that defendant engaged in tortious conduct in breaching the contract.").

In her complaint, plaintiff alleges that the OPM and the SSA intentionally interfered with her purported gradual retirement agreement with the SSA by terminating the Gradual Retirement Program.  The termination of the program, she avers, resulted in the termination of the agreement.  From these allegations, it is apparent that plaintiff's tort claim arises from her claim for breach of contract.  Thus, if the court possessed jurisdiction to entertain plaintiff's breach of contract claim, it would also have jurisdiction to adjudicate her tort claim.  Because the court lacks jurisdiction over plaintiff's breach of contract claim, however, there is no basis upon which it can entertain her intentional interference claim.

Plaintiff acknowledges that the court lacks jurisdiction to entertain her claim of intentional interference with contractual relations, and therefore seeks to have the claim transferred back to the district court.  Federal law mandates the transfer of a claim if (1) the transferring court lacks jurisdiction, (2) the transfer is in the interest of justice, and (3) the transferee court is a court in which the complaint could have been filed at the time the complaint actually was filed.  28 U.S.C. § 1631.  Because the third requirement is not satisfied in this case, the court cannot grant plaintiff's request.

As the court previously noted, a federal employee serving by appointment cannot assert a breach of contract claim against the federal government related to the terms of her employment because service by appointment necessarily means that there is no contract that can be breached.  If there is no contract, there can be no basis for a claim of intentional interference with that

contract.  The district court would therefore have no claim to adjudicate.  Moreover, plaintiff seeks damages in excess of $75,000 for her intentional interference claim.  The district court's Tucker Act jurisdiction, however, is limited to claims not exceeding $10,000.  Id. § 1346(a)(2).  In sum, because plaintiff's intentional interference claim could not have been filed in the district court in the first instance, transfer of the claim to the district court is not appropriate.

### III.  CONCLUSION

For the reasons set forth above, the court **GRANTS** defendant's RCFC 12(b)(1) motion to dismiss and **DISMISSES** plaintiff's transfer complaint for lack of jurisdiction.  Defendant's RCFC 12(b)(6) motion to dismiss is **DENIED AS MOOT**.  No costs.  The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

                                        s/ Margaret M. Sweeney
                                        MARGARET M. SWEENEY
                                        Judge